IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

WILMINGTON TRUST, NATIONAL
ASSOCIATION, SOLELY IN ITS CAPACITY AS
TRUSTEE FOR THE REGISTERED HOLDERS OF
ASHFORD HOSPITALITY TRUST 2018-KEYS
COMMERCIAL MORTGAGE PASS-THROUGH
CERTIFICATES, acting by and through Trimont Real
Estate Advisors, LLC as Special Servicer under the
Pooling and Servicing Agreement dated as of July 16,
2018,

                                        Plaintiff,

                v.

ASHFORD TIPTON LAKES LP; ASHFORD
SCOTTSDALE LP; ASHFORD PHOENIX AIRPORT
LP; ASHFORD HAWTHORNE LP; ASHFORD
PLYMOUTH MEETING LP; ASHFORD SAN JOSE
LP; and ASHFORD LV HUGHES CENTER LP,

                                        Defendants.

Civil Action File No.
1:23-cv-09989-JLR

**MEMORANDUM OPINION
AND ORDER GRANTING
PLAINTIFF'S MOTION FOR
DEFAULT JUDGMENT AND
APPOINTING RECEIVER**

THIS MATTER is before the Court on Plaintiff's motion (the "Motion") for default

judgment and for the appointment of a receiver.  Upon review of the Motion, the Complaint, and

the supporting memorandum and declarations, and for good cause shown, the Court **FINDS** as

follows:

1. That each Defendant was served with the Complaint on November
13, 2023;

2. That Defendants failed to answer or otherwise respond to the Complaint
within 21 days of service as required under Rule 12 of the Federal Rules of Civil Procedure;

3. That the Clerk entered the default on the record for related case
Civil Action File No. 1:23-cv-09988-JLR and issued the required certification;

4. That Defendants "ha[ve], through [their] failure to defend the
action, admitted liability to the plaintiff.'" *Sec. & Exch. Comm'n v. Rinfret*, No.

1

On March 1, 2024, counsel for Defendants also filed a letter at ECF No. 61 stating that they do not oppose the relief requested by Plaintiff.

19-CV-6037 (AJN), 2020 WL 6559411, at *2 (S.D.N.Y. Nov. 9, 2020), No. 19-CV-6037 (AJN), 2020 WL 6559411, at *2 (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011));

5.    That such admissions, among other things, include admitting that Defendants are in default of their obligations under the Loan (as defined herein) by, among other things, failing to pay the amounts due on the maturity of the underlying loan in dispute; and

6.    That the Complaint and Motion demonstrate grounds for the appointment of a receiver of, among other things, seven parcels of land located in four states, with each parcel being currently operated as a hotel, and that immediate and irreparable injury may result in the event a receiver is not appointed.

Based on the foregoing **FINDINGS**, the Court therefore **GRANTS** the relief requested in the Motion by entering a default judgment against Defendants and appointing a receiver.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is the current holder of certain promissory notes, security instruments, and other loan documents (collectively the "Loan Documents") evidencing that in 2018, Defendants collectively borrowed $144,400,000.00 (the "Loan") from the original lenders that were Plaintiff's predecessors-in-interest. Compl. ¶ 21. Each of the seven Defendants, which are corporate affiliates, separately owns real property and personal property (collectively the "Hotels" or the "Properties") located in five states, with each location being operated as a Marriott-branded hotel (e.g., as a Marriott Courtyard, a Residence Inn, or a SpringHill Suites). *Id.* ¶ 5, 6, 9, 11, 13, 15, and 17.

Each security instrument grants the lender a security interest in the collateral securing each Defendant's financial obligations; such collateral consists of (1) the real property and improvements comprising each Hotel, (2) each Hotel's personal property, including its books and records, and (3) the revenues from each Hotel's operations. *Id.* ¶ 23-24. In the event of default, the Loan Documents, including the security instruments, authorize Plaintiff as the current holder of the notes to seek the appointment of a receiver to take possession of the assets. *Id.* ¶ 44.

The Loan matured in July 2023.  *Id.* ¶ 30.  Defendants defaulted on the Loan by failing to pay the outstanding balance at maturity.  *Id.*  Defendants have not paid the outstanding balance as of this letter and remain in default.  Because the Loan is non-recourse, Plaintiff's remedy is limited to the value of the collateral securing the Loan.  *Id.* ¶ 47.

Consistent with its rights under the Loan Documents, Plaintiff filed this lawsuit on November 13, 2023, ECF 1, and served each Defendant's registered agent as designated in the Loan Agreement with process on November 22, 2023.  ECF 32, 39-44.  Defendants failed to answer or otherwise respond to the Complaint within 21 days of service of the summons as required by Rule 12 of the Federal Rules of Civil Procedure.  To this date, no Defendant has responded in any manner to Plaintiff's complaint.

In related case Civil Action File No. 1:23-cv-09989-JLR, which is also assigned to this Court, the Clerk of this Court issued the required certification of default in accordance with Local Rule 55.2.

## DISCUSSION

Rule 55 of the Federal Rules of Civil Procedure "sets out a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment."  *Sec. & Exch. Comm'n v. Rinfret*, No. 19-CV-6037 (AJN), 2020 WL 6559411, at *2 (S.D.N.Y. Nov. 9, 2020).  The first step requires the clerk to enter a default upon notice that a defendant has failed to plead or otherwise defend against a plaintiff's complaint within 21 days of service.  Fed. R. Civ. P. 55(a); *Bricklayers & Allied Craftworkers Loc. 2, Albany, N.Y. Pension Fund et al. v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015). This step "simply 'formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff.'"  *Rinfret*, No. 19-CV-6037 (AJN), 2020 WL

6559411, at *2 (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011)).

"The second step, entry of a default judgment, 'converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted' by the pleadings." *Id.* (quoting *Mickalis Pawn Shop*, 645 F.3d at 128).

In connection with requesting that the Clerk enter default on the record, Plaintiff has demonstrated that each Defendant was served with process. *See Sik Gaek, Inc. v. Yogi's II, Inc.*, 682 F. App'x 52, 54 (2d Cir. 2017) (stating that a plaintiff must show that the defendant was effectively served with process). Here, Plaintiff served each Defendant's registered agent in New York (as noted in the Loan Documents) with process on November 22, 2023. ECF 32, 39-44. Defendants' deadline to respond to the complaint was December 13, 2023.

## I.   By Defaulting, Defendants Have Admitted the Well-Pleaded Allegations of the Complaint, Including the Allegations of Plaintiff's Breach-of-Contract Claim.

"[A] default judgment deems all the well-pleaded allegations in the pleadings to be admitted." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997); *see also Discover Growth Fund, LLC v. OWC Pharm. Rsch. Corp.*, No. 20 CIV. 2857 (AKH), 2023 WL 3301837, at *3 (S.D.N.Y. May 8, 2023). Based on Plaintiff's factual allegations in the Complaint, entry of a default judgment is proper on Plaintiff's claim for breach of contract, and the appointment of receiver is also proper. *Rinfret*, No. 19-CV-6037 (AJN), 2020 WL 6559411, at *2 ("entry of a default judgment, 'converts [a] defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled' by the pleadings").

Under New York law, a claim for breach of contract consists of the following four elements:

(1) the existence of a valid contract; (2) Plaintiff's performance of the contract; (3) Defendants' material breach of the contract; and (4) resulting damages. *See, e.g., FaZe Clan Inc. v. Tenney*, 467 F. Supp. 3d 180, 189 (S.D.N.Y. 2020) (listing elements); *Noise in the Attic Prods., Inc. v. London Records*, 10 A.D.3d 303, 782 N.Y.S.2d 1 (1st Dep't 2004). Defendants have admitted the foregoing allegations in Plaintiff's Complaint. Paragraphs 20-29 of the Complaint allege the existence of a valid contract. Compl. ¶¶ 20-29. Plaintiff's predecessor performed its obligations under the contract at issue by lending Defendants the funds at issue. *Id.* ¶¶ 20-24. Defendants breached the Loan Documents by failing to repay all amounts owed at maturity. *Id.* ¶ 30. Plaintiff has incurred damages as a result of Defendants' breach. *Id.* ¶ 32.

Based upon the foregoing, this Court **GRANTS** Plaintiff's motion for default judgment and enters judgment in favor of Plaintiff and against Defendants on all counts of the Complaint.

## II. The Court GRANTS Plaintiff's Motion for the Appointment of Receiver and Appoints a Receiver Subject to the Terms of this Order.

### A. Standards for Appointing a Receiver

The Federal Rules of Civil Procedure "govern an action in which the appointment of a receiver is sought . . . [b]ut the practice in administering an estate by a receiver . . . must accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66. Under federal law, this Court may appoint a receiver "in any civil action . . . involving property, real, personal, or mixed, situated in different districts . . . [and] vest[] [such receiver] with complete jurisdiction and control of all such property with the right to take [immediate] possession thereof." 28 U.S.C. § 754. The express terms of the Loan Documents authorize Plaintiff to "apply for the appointment of a receiver, trustee, liquidator, or conservator of the Property [securing the Loan], without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower[s] or any other Person liable for the payment of the Debt." Hunerdosse Decl. ¶ 24

(citing Compl., Ex. 5, Ashford Phoenix LP Deed of Trust, § 8.1(g)).

"[T]he existence of a provision authorizing the application for a receiver in the event of a default, 'strongly supports the appointment of a receiver' when there is a default." *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 250 (S.D.N.Y. 2012) (citing *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97-98 (2d Cir. 1988) (citing *Mancuso v. Kambourelis*, 72 A.D.2d 636, 637, 421 N.Y.S.2d 130, 131 (3d Dep't 1979)).

Several factors support Plaintiff's request for a receiver.  In determining whether the appointment of a receiver is warranted, federal courts will also consider, *inter alia*, the following factors:

> Fraudulent conduct on the part of defendant; ***the imminent danger of the property being*** lost, concealed, injured, ***diminished in value***, or squandered; ***the inadequacy of the available legal remedies***; ***the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment***; and, in more general terms, ***plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property***.

*U.S. Bank Nat'l Ass'n*, 866 F. Supp. 2d at 249-50 (emphasis added) (granting motion to appoint receiver and citing factors) (quoting *Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (quoting 12 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (1999)) (internal alterations omitted)).  The emphasized factors also weigh in favor of the appointment of a receiver of the Properties.  For example, Plaintiff has introduced the declaration of Hunerdosse, which among other things, avers that the Loan is generally a non-recourse obligation and because the value of the Hotels is greater as entities operating in compliance with their franchise agreements with Marriott.

Hunerdosse's declaration and the allegations of the Complaint also show that in the absence of an appointed receiver, is that the value of its collateral—which currently appears to be the only recourse for Plaintiff—will be significantly impaired without the intervention of a receiver.

Hunerdosse Decl. ¶ 27-28, 30.

### B.    Terms of Receivership

Based on the foregoing, IT IS HEREBY ORDERED that Jeffrey Kolessar ("Kolessar") of GF Hotels & Resorts, with a business address at 1628 John F. Kennedy Boulevard, 23rd Floor, Philadelphia, PA 19103 (the "Receiver"), be and hereby is appointed as the receiver of Defendants' Assets (as defined herein), specifically including, but not limited to, the Premises (as defined herein) and more particularly described in the Complaint.

IT IS FURTHER ORDERED that:

1.    The Receiver shall take immediate possession of, hold, secure, take charge of, preserve and protect, to the exclusion of all others, the following assets and property of the Defendants (collectively, "Defendants' Assets") (Defendants' Assets shall exclude assets and property at or used at the Premises that are the property and assets owned by Marriott International, Inc., its Affiliates, MIF, L.L.C., Courtyard Management Corporation, Springhill SMC, LLC, Residence Inn by Marriott, LLC (collectively, the "Marriott Parties") pursuant to the terms of the agreements establishing Defendants' rights and obligations to operate the Franchised Premises as a branded hotel (collectively, the "Franchise Agreements" and Management Agreements:

a.    Certain real property and improvements and personal property thereon as follows:

| Defendants | Property Address | Hotel Name | Operation Type |
|---|---|---|---|
| Ashford Tipton Lakes LP | 3888 Mimosa Drive Columbus, IN 47201 | Courtyard by Marriott Columbus Tipton Lakes | Franchised |
| Ashford Scottsdale LP | 311 N Scottsdale Road Scottsdale, AZ 85251 | Courtyard by Marriott Scottsdale Old Town | Managed |
| Ashford Phoenix Airport LP | 801 N 44th Street Phoenix, AZ 85008 | Residence Inn by Marriott Phoenix Airport | Franchised |
| | 14620 Aviation Boulevard | | Managed |

| | | | |
|---|---|---|---|
| Ashford Hawthorne LP | Hawthorne, CA  90250 | SpringHill Suites by Marriott Los Angeles LAX/Manhattan Beach | |
| Ashford Plymouth Meeting LP | 430 Plymouth Road<br><br>Plymouth Meeting, PA 19462 | SpringHill Suites by Marriott Philadelphia Plymouth Meeting | Managed |
| Ashford San Jose LP | 35466 Dumbarton Court<br>Newark, CA  94560 | Residence Inn by Marriott Newark Silicon Valley | Franchised |
| Ashford LV Hughes Center LP | 370 Hughes Center Drive<br>Las Vegas, NV 89169 | Residence Inn by Marriott Las Vegas Hughes Center | Managed |

Each property is more particularly described in the attached <u>Exhibit 1</u> (collectively, the "<u>Premises</u>"); each property with the Operation Type "Franchised" per the chart above and as more particularly described in the attached Exhibit 1 (collectively, the "Franchised Premises"); and each property with the Operation Type "Managed" per the chart above and as more particularly described in the attached Exhibit 1 (collectively, the "Managed Premises").

   b. All documents, ledgers, journals, reports, instruments, agreements, security and access codes, combinations, merchant credit card machines and access numbers to them, the current lists of tenants (if any), tenant ledgers, tenant files, tenant histories, records pertaining to occupancy (including, without limitation, all guest/occupant ledgers, reservation reports, credit card billings, occupancy tax records, and all property tax or occupancy tax identification numbers), cash receipts journals, guest/transient bookings, banquet/facility bookings, information and materials belonging to any of the respective Defendants, whether in Defendants' or their agents' possession or control relating to the ownership, maintenance, repair, replacement, improvement, management, leasing, insuring, tax appeal, marketing, financing, use, operation, preservation and protection of the Premises and the other Defendants' Assets, and all other Property (as defined in the Security Instruments (as defined in the Complaint) (collectively, the "<u>Project Records</u>");

   c. All cash, letters of credit, checking, savings, depository, payroll, vendor, petty cash or other accounts relating to the Premises and held by or for the benefit of Defendants (collectively, the "<u>Project Accounts</u>");

   d. All payments, revenues, refunds and other income from, relating to or derived from the Premises (collectively, the "<u>Project Income</u>");

   e. All security, utility, prepayments, and other deposits received by Defendants and/or their respective agents (acting as agents for the Defendants) and any deposits made by any Defendants to any lessor, utility provider or other service provider, in each case in connection with the ownership, operation, repair or use of the Premises (collectively the "<u>Project Deposits</u>");

   f. All information systems and technology of any kind, including access

thereto, that Defendants or their respective agents maintain or utilize for the benefit of Defendants or relating to the Premises (collectively, the "Information Technology"); and

g.      The originals of all leases, subleases, licenses (including, without limitation, all liquor licenses, but excluding the Franchise Agreements), vehicle titles and any other agreements in possession or control of Defendants or their agents (acting as agents of Defendants) relating to the use of occupancy of the Premises (collectively, the "Leases").

2.      Subject to execution of the New Franchise Agreements (as defined in paragraph 12), Receiver is hereby empowered to continue the management, operation, and maintenance of the Franchise Premises as set forth herein and shall exercise all powers necessary to facilitate the operation of the Franchise Premises.  Receiver is hereby empowered to continue role of "Owner" under the Management Agreement and shall exercise all powers available to "Owner" under the Management Agreements necessary to facilitate the operation of the Managed Premises.

3.      Receiver is hereby authorized to, but need not, delegate some or all of its authority under this Order to (and to engage and compensate) one or more property management firms, including without limitation the firms currently managing the Premises, subject to Plaintiff's approval.  Upon the approval of Plaintiff of the reasonable fees and expenses of such property management firms, the Receiver shall be authorized to pay such fees as Project Expenses.  Subject to Plaintiff's approval, Receiver shall have the right to terminate such delegation to or the engagement of the current property management firms or any other property management firms it engages at the Franchise Premises and such management agreements, including, without limitation the Phoenix Airport Management Agreement, San Jose Management Agreement and Tipton Lakes Management Agreement; however, Receiver shall not have such authority under the Managed Premises.  Receiver shall be empowered to enforce any rights and remedies against any such property management firms, at law or in equity, either in its own name or as though the Receiver were standing in the place of Defendants.

4.      Defendants, their respective agents, employees, members, managers, officers and

representatives, any parties managing any portion of the Franchised Premises and any and all other contractors, persons and entities retained, hired or engaged by any Defendant to provide goods or services at the Franchised Premises (collectively, the "<u>Defendant Parties</u>") [Marriott is not a defendant party] are hereby ordered (a) to immediately surrender possession and control of Premises to the Receiver; and (b) to immediately surrender possession and control of all other Defendants' Assets in their possession or control, specifically including, without limitation, (i) all Project Records, (ii) all Project Documents; (iii) all Project Accounts, (iv) all Project Deposits, (v) all Project Income, (vi) all Information Technology (vii) the originals of all Leases; (viii) the originals of all other contracts and agreements relating the Premises, (x) the originals of all liquor licenses relating to the Premises (unless held by Marriott Parties) and (xi) all other Property, to the Receiver.   The Receiver is hereby authorized and directed to take possession of and hold, retain, preserve, protect, use, operate, maintain and manage Defendants' Assets, including the Premises, to receive all Project Income and Project Deposits, and to execute any documents, instruments and agreements to allow the Receiver to take possession of and control and to draw checks on any and all Project Accounts.  All such documents shall be submitted to the Receiver within five (5) business days of the date of this Order.  Subject to paragraph 5 of this Order, any future income related to the Premises shall be turned over to the Receiver immediately upon receipt.  The Receiver is hereby authorized and directed to take possession of and hold, retain, preserve, protect, use, operate, maintain and manage Defendants' Assets, including, without limitation, the Premises, to receive all Project Income and Project Deposits, and to execute any documents, instruments and agreements to allow the Receiver to take possession of and control and to draw checks on any and all Project Accounts.

     5.     Notwithstanding anything in this Order to the contrary, the rents, profits, license,

fees, etc. shall continue to be deposited, managed and disbursed in accordance with the terms of the Cash Management Agreement, dated as of June 13, 2018, executed by Defendants in connection with the Loan (as defined in <u>Exhibit 3</u>), and currently held by Plaintiff. Receiver is hereby authorized to establish one or more operating bank accounts to receive funds from the Cash Management Account (as defined in the Cash Management Agreement). Receiver may request the release of funds from the Cash Management Account, which funds shall then be applied as required by paragraph 15.

6.      Subject to paragraph 15 of this Order, all funds in any account maintained by the Receiver pursuant to this Order shall remain collateral for the Loan pursuant to the Loan Documents and shall be paid to Plaintiff upon the earliest to occur of (i) the consummation of the judicial or non-judicial foreclosure and sale of all of the Premises (or a combination thereof with Paragraph 6(ii) herein); (ii) the consummation of and conveyance of the all Premises by Deeds-in-Lieu of Foreclosure (or a combination thereof with Paragraph 6(i) herein); (iii) payment of the Loan in full; (iv) a final judgment of this Court is entered terminating the receivership created by this Order; (v) the consummation of a sale or sales of all of the Premises pursuant to further order of this Court; (vi) the written request of Plaintiff that is so-ordered by this Court; (vii) the written request of the Receiver (made with written consent from Plaintiff) that is so-ordered by this Court; or (viii) further order of this Court.

7.      The Receiver is authorized to serve this Order on any of the financial institutions that maintain any Project Accounts, and all such financial institutions and any other persons in active concert or participation with Defendants are authorized to take such steps as are necessary to restrain or prevent Defendant Parties from withdrawing, disbursing, distributing or causing the diversion of any funds, cash, income, deposits in any Project Accounts and are authorized to

immediately turn over all funds in any Project Accounts to the Receiver.  Any financial institution

maintaining Project Accounts is authorized to provide to the Receiver a complete listing of account

numbers under the name of Defendants, including accounts previously closed.  For each such

Project Account the financial institution is authorized to provide the current balance for such

account and upon request by the Receiver is authorized to provide monthly bank statements (and

details of any such transactions as requested) for a period of up to one (1) year prior to entry of

this Order.

8.      Defendants and any Defendant Parties charged with operating and/or managing the

Premises are hereby directed to deliver to the Receiver and Plaintiff within five (5) days after the

date of this Order:

a.      an accounting of all Project Income, all Project Expenses, whether paid with Project Income or by Defendants for the benefit of the Premises, all Project Accounts and all Project Deposits for the period beginning from and after January 1, 2023 to the date of this Order;

b.      monthly operating statements prepared for each calendar month for the months of January 2023 through and including the present month, and year-to-date operating statements, each of which shall include an itemization of actual (not pro forma) capital expenditures during the applicable period and each of which shall also be certified true and correct by Defendants or other Defendant Parties charged with operating the Premises;

c.      all Project Income generated by the Premises from and after January 2023 in their possession, custody or control, to the date of this Order which was not applied to the standard and customary operating expenses of the Premises or delivered to the Plaintiff;

d.      all Sales Tax Identification Numbers, log-ins and copies of filed returns from and after January 1, 2023; and

e.      an itemization of all unpaid bills, a list of any and all liens, mechanics liens, or similar, filed against any of the Premises, and any other amounts due and payable relating to the Premises, together with all bills, invoices and other writings evidencing or relating thereto, which unpaid bills and other amounts due shall remain the sole obligation and responsibility of Defendants and/or Defendants' management company, and Defendants' tax identification numbers.

The Receiver shall not be responsible for payment of any expenses (including,

without limitation, for services, build-outs, or any other construction), utility bills (including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone) and unpaid payroll expenses incurred by, or for the benefit of, the Premises prior to the Receiver's taking possession of the Premises. Defendants shall request that all utilities companies and other providers of utility services, including without limitation, electricity, gas, water, sewage, garbage, television/cable and telephone not discontinue any services being provided to the Premises. Each utility company or entity providing service to the Premises is authorized to forthwith transfer any deposits which it holds in connection with the Premises to the exclusive control of Receiver. The Receiver is authorized to open new customer accounts with each utility that provides services to the Premises, or require Defendants to name Receiver as an authorized user of any of the existing utility accounts for the Premises. Each utility company is barred from interrupting service due to pre-receivership liabilities.

9.      The Receiver is authorized and directed to demand, collect and receive from the Premises all amounts and consideration now due and unpaid thereunder or hereafter to become fixed or due thereunder.  Anyone who owes such amounts is authorized to pay them to the Receiver.

10.     The Receiver is hereby authorized and directed to make, cancel, terminate, enforce, or modify contracts, leases, or licenses as they relate to the Franchised Premises (as stated in paragraph 28) as the Receiver may determine in its sole judgment is necessary with no further obligation or liability including not having to pay any termination fees under any terminated contract or agreement.  No required consent of Plaintiff, nor any other provision of this Order shall render or cause, or shall be deemed to render or cause, Plaintiff to be a mortgagee in possession of the Premises or otherwise subject Plaintiff to any liability under the Loan Documents or otherwise.  The Receiver shall operate and manage the Franchised Premises in a reasonable manner in accordance with all contractual obligations, including, without limitation, the New Franchise Agreements and otherwise in accordance with applicable state, local, and federal laws.

11.     Receiver may offer employment to existing employees working at the Premises of Defendants or related parties (including any management companies engaged by Defendants) to continue any business operations, or in the alternative hire all employees as those of any management company or other entity hired by Receiver. Defendants or any management

companies engaged by Defendants (as appropriate) will be solely and exclusively responsible for (i) any claims or liabilities that arose prior to the appointment of Receiver that are in any way related to an employee's employment with or separation from Defendants or any management companies engaged by Defendants, including any compensation, benefits, accrued vacation, payroll taxes, workers compensation insurance, severance liabilities, contractual obligations, benefit plans, and (ii) liabilities existing prior to Receiver's appointment related to the Worker Adjustment and Retraining Notification Act (WARN), 29 U.S.C. § 2101, *et seq.*, and liabilities existing prior to Receiver's appointment related to the Consolidated Omnibus Budget Reconciliation Act (COBRA), or similar state statutes or regulations.   Receiver and property management companies it engages shall be solely and exclusively responsible for any of the items identified in the preceding sentence that arise during the tenure of Receiver.  All pre-receivership liabilities for which Defendants and/or any management companies engaged by Defendants bear responsibility will not be carried and reported as those of the receivership estate.

12.     With respect to the Hotels subject to a Franchise Agreement with Marriott International, Inc. or MIF, L.L.C. (collectively, "Marriott"), the Receiver has the right to enter into a form franchise agreement (each a "New Franchise Agreement") with Marriott in form and substance satisfactory to the Receiver and Marriott, and to have the applicable Hotel operated in accordance with the terms of a New Franchise Agreement by a third-party management company approved by Marriott in accordance with the terms thereof.   The obligations of the Receiver shall be to insure that the Hotel is operated in accordance with state, local and federal laws, and maintained in accordance with the Standards required by a New Franchise Agreement, and that both past due payments and those that come due under a New Franchise Agreement during the receivership shall be promptly paid to Marriott as on-going operating expense ahead of those

payments due to the Receiver and Plaintiff.   In the event there are insufficient funds from the operation of the Hotel to pay all amounts due to Marriott or its affiliates under a New Franchise Agreement (or related thereto), Plaintiff shall fund such amounts due to Marriott as a protective advance under the Loan.  In the event the Receiver fails to comply with the terms of a New Franchise Agreement and cure any defaults that may be cured under the terms of such New Franchise Agreement, Marriott shall have the absolute right to terminate such New Franchise Agreement consistent with its terms, immediately on written notice to the Receiver.   The Receiver shall have the right to expend and disburse funds for payment to Marriott for amounts due from time to time under the New Franchise Agreements without the approval of Plaintiff.

13.    The Receiver is hereby authorized and directed to lease, rent and license the Premises on such terms and conditions as may be approved in writing by Plaintiff.

14.    The Receiver is authorized and directed (a) to deposit or cause to be deposited all Project Income and all other funds and monies received by it pursuant to this Order into the Cash Management Account in accordance with paragraph 5 above; and (b) to make available by electronic means or by means as otherwise determined by the Receiver and as allowed under this Order copies of the monthly bank statements relating to such accounts for the parties' review and inspection.

15.    Subject to anything set forth in the Loan Documents to the contrary, and subject to the provisions of paragraph 12 above, the Receiver is authorized and directed to use the Project Income, and all other funds and monies coming into the Receiver's hands pursuant to this Order (including disbursements of funds to Receiver from the Cash Management Account but excluding Project Deposits) as follows:

      a.    first, to the payment of any real estate taxes and insurance premiums for the Premises;

      b.    <u>second</u>, to payment of the Receiver's fees as set forth in <u>Exhibit 4</u> attached hereto and incorporated herein;

      c.    <u>third</u>, to the payment of all currently payable Hotel employee payroll expenses;

      d.    <u>fourth</u>, to the reasonable out-of-pocket third-party costs and expenses incurred by the Receiver in the ordinary course of the performance of the Receiver's duties in accordance with this Order;

      e.    <u>fifth</u>, to the payment of all monthly Project Expenses, other than those paid pursuant to paragraph 15(a) and 15(c) above, arising, in each case, from and after the date of this Order and being reasonably necessary to hold, retain, manage, lease, operate, use, preserve and protect Defendants' Assets in accordance with this Order, <u>provided</u>, however, that the Receiver shall not expend in excess of $25,000.00 for any single repair, replacement or capital improvement without the prior written  approval of Plaintiff, and <u>provided further</u>, however, that the Receiver may, only upon the prior written approval of Plaintiff, use Project Income to pay Project Expenses arising prior to the date of this Order; and

      f.    <u>last</u>, on or before the twentieth (20th) day of each calendar month after the date of this Order, all remaining Project Income, funds and monies (collectively, "<u>Excess Funds</u>") to Plaintiff for application against the outstanding expenses, costs, interest, principal, fees and other amounts owed by Defendants under the Loan Documents, with such Excess Funds to be applied by Plaintiff in such order and manner in Plaintiff's sole discretion.

    16.    If the Receiver (i) determines at any time, and from time to time, that the amount of Project Income then in the possession of the Receiver, or which the Receiver anticipates will be in the possession of the Receiver when required, is insufficient to pay any expenses described in paragraphs 15(a) through 15(e) of this Order, or (ii) receives bills for Project Expenses pertaining to periods that precede the date of this Order, then the Receiver shall promptly notify Plaintiff thereof and of the amount of such deficit or such bills, whereupon Plaintiff shall have the right, but not the obligation, to (a) release additional funds from the Cash Management Account to satisfy such deficit, or (b) if there are insufficient funds in Cash Management Account to satisfy such deficit, advance to the Receiver funds to pay all or any portion of such deficit or permit Receiver to pay such bills. Any funds advanced by Plaintiff pursuant to this paragraph (i) shall be repaid as an expense of the Receiver if advanced directly by the Receiver in accordance with

paragraph 15(b) of this Order, and (ii) to the extent advanced by Plaintiff, shall be deemed an advance to Defendants under the Loan Documents for the protection and preservation of the Premises and the other Defendants' Assets, shall be added to the outstanding principal amount of the Loan and shall be secured by the mortgage, security title, security interest, lien and/or encumbrance of the Security Instruments and the Loan Documents, and no such amount advanced by Plaintiff shall render or shall be deemed to render Plaintiff a mortgagee in possession of the Premises or otherwise subject Plaintiff to any liability to Defendants under the Loan Documents or otherwise.

17.     The Receiver is authorized to institute, carry on and maintain all actions, suits, proceedings and procedures necessary (a) for the proper management, operation, preservation and protection of the Premises and the other Defendants' Assets or to gain or recover possession of all or any part thereof; (b) for collection of any Project Income now due or hereafter to become due or fixed; and (c) for the removal of any person unlawfully possessing, occupying or using any part of the Premises.

18.     The Receiver is authorized to, in accordance with and subject to applicable law, (a) continue to utilize Defendants' or their respective affiliates' liquor licenses attributable to the Premises and/or (b) transfer such liquor licenses into the Receiver's name.  Defendants and/or their affiliates shall cooperate in the transfer of the liquor licenses, shall execute and deliver such documentation and certificates as are necessary or required to operate, and/or transfer the liquor licenses, and shall not engage in acts whatsoever that would interfere with the operation or transfer thereof.

19.     The Receiver is authorized to prepare and file sales, beverage, and occupancy tax returns with respect to the Property, as may be required by law; provided, however, Receiver is

not responsible for the preparation of or filing of any state or federal income tax returns for Defendants or any of their affiliates and shall not be responsible for paying any unpaid federal or state taxes on behalf of Defendants;  Receiver shall be entitled to obtain new Tax Identification Numbers.  The Receiver is authorized to use the tax identification number of Defendants with respect to the Premises for any lawful purpose.

20.     Defendants shall provide Receiver with its federal employment identification numbers for the Receiver's use on a limited basis as necessary.

21.     Notwithstanding any other provision hereof, the Receiver shall be under no obligation to complete or file tax returns on behalf of Defendants for income or other taxes arising before the date of this Order, Receiver and the receivership estate shall not be liable for the payment of taxes of any kind, assessments, goods or services provided to Defendants for the Premises prior to the date of this Order.

22.     On or before the thirtieth (30th) day of each calendar month, the Receiver shall provide by electronic means or by means otherwise determined by the Receiver and as allowed under this Order monthly financial reports for the immediately preceding month to Plaintiff and Defendant concerning the operations, income and expenses of the Premises.

23.     Upon written request by Plaintiff, the Receiver is authorized to (a) order appraisals for the Premises; (b) list or otherwise advertise all or a portion of the Premises for sale with a brokerage firm approved by Plaintiff on terms and conditions approved by Plaintiff; (c) solicit offers to purchase all or a portion of the Premises; (d) provide promptly to Plaintiff and Defendants copies of all such offers; and, (e) enter into purchase and sale agreements in connection with the sale of all or a portion of the Premises.  Plaintiff shall be permitted, from time to time, to contact such brokerage firm and any party or parties which may have an interest in purchasing the Premises

or which have made any proposal to purchase the Premises and to discuss and negotiate the terms of such offer provided that Plaintiff shall report the nature and content of such discussions and negotiations to the Receiver periodically, and no such contact, discussion or negotiation with such party or parties shall render or cause or shall be deemed to render or cause Plaintiff to be a mortgagee in possession of the Premises or otherwise subject Plaintiff to any liability under the Loan Documents or otherwise.  Upon request by Plaintiff, the Receiver shall, or Plaintiff itself may, file a motion (and seek a hearing on an expedited or emergency basis on such motion) for permission to sell the Premises.  Any response or opposition to such motion must be filed within ten (10) days after the motion is filed. Plaintiff and Defendants agree that the Court may rule on the motion and supporting documents without conducting a hearing. If the Court determines that appropriate circumstances exist for selling all or a portion of the Premises, the Court may enter an order authorizing and directing the Receiver to sell the Premises and Defendants' Assets on the terms set forth in the Court's order, or as are acceptable and approved in writing prior to such sale by Plaintiff if there is no opposition to the motion.  The Premises and Defendants' Assets may be sold by way of public or private sale or other disposition free and clear of all security interests, liens, claims and other interests, all valid security interests, liens, claims, and other interests, if any, shall attach to the proceeds of such sale(s). The Receiver shall be authorized to execute any documentation on behalf of the applicable Defendants as attorney-in-fact to effectuate such sale(s).

24.     In connection with any sale of the Premises by the Receiver in accordance with this Order, Plaintiff shall have the right, but not the obligation, in its sole discretion, to permit a purchaser of the Premises to assume the Loan and to make any modifications to the Loan to which Plaintiff agrees in writing (including, without limitation, the extension of the Loan maturity date,

change in the interest rate, a reduction of the outstanding principal balance of the Loan and changes to the reserves and escrows for the Loan). The Receiver is hereby authorized and directed to execute any documentation on behalf of Defendant as its attorney-in-fact to effectuate such assumption and modification of the Loan, so long as such modifications do not increase the indebtedness and other amounts owed by Defendants under the Loan Documents.

25.     The Receiver is authorized to engage and compensate any assistants, professionals, independent contracts, accountants, and attorneys, as needed in the reasonable discretion of the Receiver, to advise the Receiver with regard to financial and legal matters relating to Defendants' Assets, to prepare financial statements and reports required under this Order, to initiate, carry on and maintain such actions, suits and proceedings for and on behalf of the Receiver and as may be necessary for the Receiver to carry out its duties and responsibilities under this Order and as otherwise may be reasonably required by the Receiver. However, Receiver's employment of any attorneys in addition to AHP Law Group LLC and Holland and Knight LLP are subject to Plaintiff's approval. Upon the approval of Plaintiff of the reasonable fees and expenses of such attorneys, the Receiver shall be authorized to pay such fees and expenses as Project Expenses.

26.     Within ten (10) business days after the date of this Order, the Receiver is authorized and directed to procure and maintain in full force and effect, and to pay the premiums for, insurance policies relating to the Premises with such types of coverages, in such amounts and issued by such companies as are specified in the Loan Documents. Each such insurance policy obtained by the Receiver shall name the Receiver, Defendants and Plaintiff as named insureds and Plaintiff as loss payee. Defendants and their agents shall deliver copies of the existing insurance policies to the Receiver and are prohibited from canceling, reducing or modifying any and all insurance coverage in existence with respect to the Premises that are in effect as of the date of this Order until the

Receiver notifies Defendants and Plaintiff that the Receiver has obtained insurance for the Premises in accordance with this Order.   Any refunds of pre-paid insurance premiums received by any Defendant or its agents upon the cancellation of their insurance coverage for the Premises is Project Income that shall be immediately remitted by Defendants to the Receiver.   Defendants and their respective agents are prohibited from canceling, reducing or modifying any and all insurance coverage in existence with respect to the Premises that is in effect as of the date of this Order without the consent of the Receiver.

27.   Defendants and their agents shall promptly provide their tax identification numbers and any other information requested by the Receiver in order to carry about the Receiver's duties under this order.

28.   The Receiver is authorized to execute any documents, instruments, contracts, purchase orders and agreements from time to time necessary to permit the Receiver to obtain possession of and to control, use, operate, maintain, improve, manage, lease, insure, market, preserve and protect the Premises and the other Defendants' Assets and otherwise to carry out the Receiver's obligations under this Order.

29.   In holding, retaining, managing, operating, preserving and protecting the Defendants' Assets, the Receiver shall not be bound by or otherwise subject to any existing management agreement, any real estate listing, brokerage, sales or leasing agreement or any other obligation contract or agreement, other than the Leases, existing as of the date of this Order which relates to the ownership, use, leasing, management, maintenance, repair, preservation or operation of the Premises and the other Defendants' Assets.  Subject to Plaintiff's prior written approval, Receiver shall have the authority to reject all preexisting contracts and leases, renew or modify existing contracts and enter into new contracts in the name of the applicable Defendant.

30.     During the pendency of this action, the Defendant Parties and all persons acting in concert with any of the foregoing are hereby enjoined and restrained: (a) from collecting any Project Income; (b) from taking possession of any part of the Premises or any of the other Defendants' Assets; (c) from entering into any Lease or renewing, extending, modifying, amending in any way or terminating any Lease; and (d) from intentionally hindering or interfering with in any way the performance of the Receiver's obligations, duties and instructions hereunder or with the Premises or any of the other Defendants' Assets or the Receiver's possession and control thereof.

31.     The Defendant Parties, and all persons and entities acting in concert with any of them (a) shall promptly deliver to the Receiver any and all mail, notices and other written communications and shall promptly notify the Receiver of any oral notices or communications in any way relating to the Premises or the other Defendants' Assets which are received by such party on and after the date of this Order; and (b) shall cooperate, in good faith and with due diligence, with the Receiver in, among other things, transferring utilities and other services provided to the Premises out of the Defendants' name and into that of the Receiver (if the Receiver so requests), and carrying out such other terms and purposes of this Order, and if and when requested by the Receiver, shall acknowledge and confirm to persons or entities designated by the Receiver the authority of the Receiver under this Order to take possession of, hold, secure, take charge of, manage, lease, operate, preserve and protect the Premises and the other Defendants' Assets, specifically including, without limitation, the Project Income, the Project Accounts and the Project Deposits.

32.     Notwithstanding anything in this Order to the contrary, (a) to the extent Receiver intends to take any action (including any actions authorized by this Order) which is an action which

requires the consent of Plaintiff under the Loan Documents if such action was to be taken by a Defendant, then Receiver shall be required to obtain such consent from Plaintiff in accordance with the terms and provisions of the Loan Documents prior to taking any such action and no action of Receiver which requires such consent shall be authorized under this Order unless Receiver first obtains such consent, and (b) Plaintiff is hereby permitted to proceed with and exercise any and all available rights and remedies under the Loan Documents, including, without limitation, exercising its rights as holder of security title to Defendants' Assets and as a secured creditor under the Loan Documents, under Article Nine of the Uniform Commercial Code in effect in the applicable jurisdiction or under other applicable law governing such rights, by judicial or non-judicial foreclosure, power of sale or as otherwise provided under the Loan Documents, should Plaintiff so elect. Plaintiff shall notify the Receiver of any such sale or other exercise of Plaintiff's rights and/or remedies, and the Receiver shall cooperate with Plaintiff in the consummation of any such action or actions, including, without limitation, execution of such deeds, bills of sale and other documents, instruments and agreements provided that none of such documents, instruments or agreements subject the Receiver to any personal liability.

33.     The liability of Receiver is and shall be limited to the assets of the receivership and Receiver shall not be personally liable for any actions taken pursuant to this Order except for his gross negligence or malfeasance.  Neither Receiver nor Plaintiff shall be personally liable for any pre-receivership expenses or any actions taken by Defendants, its agents, employees and any management companies engaged by Defendants, before, during or after the receivership.  No person or entity, including any governmental entity, shall file suit against Receiver, or take other action against Receiver, regarding anything related to the Premises or Receiver's action or inaction as Receiver, without an order of the Court permitting the suit or action; provided, however, that

no prior court order is required to file a motion in this action to enforce the provisions of this Order or any other order of the Court in this action.

34.     If and when judicial or non-judicial foreclosure proceedings against the entire Premises shall have been consummated, or upon the consummation and conveyance of the entire Premises pursuant to a Deed-in-Lieu of Foreclosure, or upon the sale of the entire Premises pursuant to a further order or orders of this court, or upon payment of the Loan in full, and without further order of this Court, the Receiver shall within thirty (30) days of such occurrence move the Court to be discharged and relieved from this Order and shall render a final report to the Court, to Plaintiff and to Defendants concerning the operations of Defendants' Assets.  The parties shall file any objections to the motion and report within fifteen (15) days of the filing of such documents. This Court expressly retains continuing jurisdiction over this receivership until after the rendition of the final report by the Receiver and the entry of an order discharging the Receiver.  Without limiting the foregoing, Plaintiff and the Receiver have the right to seek the termination of the Receiver upon written request to the Court, without filing a motion, which shall be effective when so-ordered by the Court.  Upon the Court so-ordering such a request, the Receiver shall within 45 days render a final report to the Court, to Plaintiff and to Defendants concerning the operations of Defendants' Assets.  In consideration of Receiver's preparation of a final accounting and Receiver's cooperation in connection with any transition of management of the Premises to an unrelated party, the Receiver shall be compensated according to the fee schedules set forth in Exhibit 3  at the conclusion of the Receivership.  The parties shall file any objections to the motion and report within fifteen (15) days of the filing of such documents.

35.     Upon Receiver's discharge, Receiver shall be entitled to retain sufficient funds to pay any outstanding expenses that Receiver has incurred on behalf of the Premises that are

authorized by this Order.

36.     The Receiver shall permit Plaintiff, and its agents and independent contractors, to inspect the Premises and the Project Documents.

37.     The Receiver may obtain, use and operate under the New Franchise Agreements and under any and all Leases currently in effect for the Premises. The Receiver may communicate with, negotiate with and enter into new or any amendment of any lease, license or franchise agreement relating to the Premises, including, without limitation, the New Franchise Agreements and any related comfort or third party letter agreements as they may relate to the Loan and the Loan Documents, provided that any such new agreements or amendments shall be subject to the prior written approval of Plaintiff in Plaintiff's sole and absolute discretion. The Receiver is hereby authorized and directed, without further order of this Court, in connection with the same, to execute any documentation on behalf of Defendants as their attorney-in-fact to effectuate any such new or amendment of any license or franchise agreement relating to the Premises, and any related comfort or third-party letter agreements as they may relate to the Loan and the Loan Documents.  The Receiver may cure any existing defaults under the existing Franchise Agreements as may be required under the terms of the comfort letters issued to Plaintiff by Marriott for such Hotels.  The Receiver shall not be obligated to pay termination fees or liquidated damages under the existing Franchise Agreements.

38.     The Receiver is required to submit proof of receiver's bond with the Clerk of this Court in the amount of $50,000.00 (the "Bond") within ten (10) business days of this Order.  Upon the Receiver's submission of proof of Bond, the Receiver shall be authorized and empowered to perform its duties under this Order, including taking control of Defendants' Assets.   The cost of the Bond shall be an expense of the receivership estate, and Receiver shall be entitled to reimburse

himself for the cost associated with obtaining the Bond.

39.     In addition to the powers and instructions expressly set forth in this Order, the Receiver shall have all of the powers of a receiver which are authorized by law to hold, retain, manage, operate, preserve and protect the Premises and the other Defendants' Assets and otherwise to comply with the terms of this Order.

40.     The Receiver, its employees, agents and officers shall have no personal liability and they shall have no claim asserted against them relating to the Receiver's duties under this Order or relating to events or circumstances occurring prior to the appointment of the Receiver. The protection of the Receiver from liability shall include, but not be limited to, any liability from the performance of services rendered by third parties on behalf of Defendants, and any liability for which Defendants are currently or may ultimately be exposed under applicable law pertaining to the ownership and operation of the Premises, except for claims due to their gross negligence, gross or willful misconduct, or malicious acts.   The receivership estate shall indemnify and hold harmless Receiver, its employees, attorneys, management companies, contractors or control persons from any claims made by persons not a party to this Order, which claims are related to or arise out of the operation of this receivership, except in the case where Receiver or its employees, employees, attorneys, management companies, contractors or control persons have committed fraud, gross negligence or willful misconduct or acted beyond the scope of the receivership authority.

41.     In the event that a bankruptcy case is filed by any Defendant during the pendency of the receivership created by this Order, Defendants must give notice of same to this Court, to all parties, and to the Receiver, within 24 hours of the bankruptcy filing.

42.     Upon receipt of notice that a bankruptcy has been filed which includes as part of

the bankruptcy estate any property which is the subject of this Order, the Receiver shall do the following:

    a.    Immediately contact the Plaintiff and determine whether that party intends to move in the Bankruptcy Court for an order for both: (i) relief from the automatic stay or motion to dismiss and (ii) relief from the Receiver's obligation to turn over the Defendants' Assets (11 U.S.C. Section 543). If the Plaintiff indicates no intention to file such a motion within 10 days, then the Receiver shall immediately turn over the Defendants' Assets (to the trustee in bankruptcy, or if one has not been appointed, then to the Defendant), and otherwise comply with 11 U.S.C. Section 543.

    b.    If the Plaintiff notifies the Receiver of its intention to immediately seek relief from the automatic stay or file a motion to dismiss, then the Receiver is authorized to remain in possession and preserve the Defendants' Assets pending the outcome of those motions pursuant 11 U.S.C. Section 543 (a). The Receiver's authority to preserve the Defendants' Assets is limited as follows: The Receiver may continue to collect rents, issues, and profits. The Receiver may make disbursements, but only those which are necessary to preserve and protect the Defendants' Assets. The Receiver shall not execute any new leases or other long-term contracts. The Receiver shall do nothing that would affect a material change in circumstances of the Defendants' Assets.

    c.    The Receiver is authorized to retain legal counsel to assist the Receiver with the bankruptcy proceedings.

43.    Upon the termination of the receivership, Receiver shall deliver to Plaintiff or its designee all Project Records, Information Technology and such books and records that should come into the Receiver's possession under this Order.

**IT IS FURTHER ORDERED**, that Defendants and all persons and entities acting in concert with any of them are hereby **ENJOINED** from: (a) taking any action inconsistent with the terms of this Order; (b) interfering with the Receiver exercising in his powers and performing its duties pursuant to this Order; (c) removing, destroying, concealing or altering any of the Defendants' Assets, specifically including, without limitation, the Project Records; (d) taking any action with respect to the control, use, management, preservation, repair, maintenance, leasing or operation of the Premises and the other Defendants' Assets, except as otherwise permitted under this Order or upon the specific request of the Receiver; (e)   no person or entity, including

governmental entity, shall file suit against Receiver, or take other action against Receiver, regarding anything related to the Premises or Receiver's action or inaction as Receiver, without an order of the Court permitting the suit or action; provided, however, no prior court order is required to fila a motion in this action to enforce the provisions of either this Order or any other order of the Court in this action; and (f) in the event of a sale of the subject loan or control over the subject loan documents is transferred to a party unaffiliated with Plaintiff, then the Receiver may withdraw as Receiver upon thirty (30) days' notice to the parties and this Court, or on any such earlier date as the Court may permit pursuant to an order of this Court.

**IT IS FURTHER ORDERED** that, and notwithstanding anything to the contrary contained herein, and with respect to the portion of the Premises that comprises the hotel commonly known as the Courtyard by Marriott Scottsdale Old Town (the "Scottsdale Hotel"), the Receiver shall perform its duties hereunder in a manner that is in accordance with the terms of (i) the Scottsdale SNDA and (ii) the Scottsdale Management Agreement as if Receiver was the "Owner" thereunder.  The Scottsdale SNDA and the Scottsdale Management Agreement shall remain in full force and effect in accordance with their respective terms despite the appointment of the Receiver and the Receiver shall have no right to cancel or terminate the Scottsdale Management Agreement, except in accordance with its terms.  Until such time as the Scottsdale Management Agreement is terminated according to its terms, or this Order is modified with the consent of Courtyard Management Corporation, the Receiver or its designee shall have the rights granted to, and the obligations of Owner, as defined in the Scottsdale Management Agreement and shall be entitled to act on behalf of, Owner under the Scottsdale Management Agreement. The Receiver shall comply with the terms of the Scottsdale Management Agreement but shall not have any personal liability when acting as Owner to the extent insufficient funds prevent the

Receiver's compliance.  If there are insufficient funds from the operation of the Scottsdale Hotel to pay obligations of Owner pursuant to the terms of the Scottsdale Management Agreement, Plaintiff shall fund such amounts.  The Receiver will not act in contravention of Courtyard Management Corporation's rights under the Scottsdale SNDA and the Scottsdale Management Agreement.  In addition, Courtyard Management Corporation will recognize the Receiver, or its designee, as the Owner under the Scottsdale Management Agreement, and Courtyard Management Corporation will continue to have the right to operate the Scottsdale Hotel in accordance with Scottsdale Management Agreement subject to its terms and conditions. Notwithstanding any other provision of this Order, Courtyard Management Corporation is authorized to pay any costs and expenses of the Scottsdale Hotel, including costs and expenses that arise or relate to periods prior to the Receiver's appointment subject to and in accordance with the provisions of the Scottsdale Management Agreement and the Scottsdale SNDA.  Receiver or its designee is, in all events, authorized and empowered to take any and all appropriate action required of Owner by and pursuant to the Scottsdale Management Agreement, including taking any and all appropriate action in administering the Scottsdale Management Agreement.  Use of the terms "Defendants' Assets" and "Project Income" shall not include any "Defendant's Assets" or "Project Income" to be held by the applicable Marriott Parties for the management and operation of the Scottsdale Hotel pursuant to the terms of the Scottsdale Management Agreement.

**IT IS FURTHER ORDERED** that, and notwithstanding anything to the contrary contained herein, and with respect to the portion of the Premises that comprises the hotel commonly known as SpringHill Suites by Marriott Los Angeles LAX/Manhattan Beach (the "Hawthorne Hotel"), the Receiver shall perform its duties hereunder in a manner that is in accordance with the terms of (i) the Hawthorne SNDA and (ii) the Hawthorne Management

Agreement as if Receiver was the "Owner" thereunder.   The Hawthorne SNDA and the Hawthorne Management Agreement shall remain in full force and effect in accordance with their respective terms despite the appointment of the Receiver and the Receiver shall have no right to cancel or terminate the Hawthorne Management Agreement, except in accordance with its terms. Until such time as the Hawthorne Management Agreement is terminated according to its terms, or this Order is modified with the consent of SpringHill SMC, LLC, the Receiver or its designee shall have the rights granted to, and the obligations of Owner, as defined in the Hawthorne Management Agreement and shall be entitled to act on behalf of, Owner under the Hawthorne Management Agreement.   The Receiver shall comply with the terms of the Hawthorne Management Agreement but shall not have any personal liability when acting as Owner to the extent insufficient funds prevent the Receiver's compliance.   If there are insufficient funds from the operation of the Hawthorne Hotel to pay obligations of Owner pursuant to the terms of the Hawthorne Management Agreement, Plaintiff shall fund such amounts.   The Receiver will not act in contravention of SpringHill SMC, LLC's rights under the Hawthorne SNDA and the Hawthorne Management Agreement.   In addition, SpringHill SMC, LLC will recognize the Receiver, or its designee, as the Owner under the Hawthorne Management Agreement, and SpringHill SMC, LLC will continue to have the right to operate the Hawthorne Hotel in accordance with Hawthorne Management Agreement subject to its terms and conditions. Notwithstanding any other provision of this Order, SpringHill SMC, LLC is authorized to pay any costs and expenses of the Hawthorne Hotel, including costs and expenses that arise or relate to periods prior to the Receiver's appointment subject to and in accordance with the provisions of the Hawthorne Management Agreement and the Hawthorne SNDA. Receiver or its designee is, in all events, authorized and empowered to take any and all appropriate action required of Owner

by and pursuant to the Hawthorne Management Agreement, including taking any and all appropriate action in administering the Hawthorne Management Agreement.  Use of the terms "Defendants' Assets" and "Project Income" shall not include any "Defendant's Assets" or "Project Income" to be held by applicable Marriott Parties for the management and operation of the Hawthorne Hotel pursuant to the terms of the Hawthorne Management Agreement.

**IT IS FURTHER ORDERED** that, and notwithstanding anything to the contrary contained herein, and with respect to the portion of the Premises that comprises the hotel commonly known as the SpringHill Suites by Marriott Philadelphia Plymouth Meeting (the "Plymouth Meeting Hotel"), the Receiver shall perform its duties hereunder in a manner that is in accordance with the terms of (i) the Plymouth Meeting SNDA and (ii) the Plymouth Meeting Management Agreement as if Receiver was the "Owner" thereunder.  The Plymouth Meeting SNDA and the Plymouth Meeting Management Agreement shall remain in full force and effect in accordance with their respective terms despite the appointment of the Receiver and the Receiver shall have no right to cancel or terminate the Plymouth Meeting Management Agreement, except in accordance with its terms.  Until such time as the Plymouth Meeting Management Agreement is terminated according to its terms, or this Order is modified with the consent of SpringHill SMC, LLC, the Receiver or its designee shall have the rights granted to, and the obligations of Owner, as defined in the Plymouth Meeting Management Agreement and shall be entitled to act on behalf of, Owner under the Plymouth Meeting Management Agreement.  The Receiver shall comply with the terms of the Plymouth Meeting Management Agreement but shall not have any personal liability when acting as Owner to the extent insufficient funds prevent the Receiver's compliance.  If there are insufficient funds from the operation of the Plymouth Meeting Hotel to pay obligations of Owner pursuant to the terms of the Plymouth Meeting Management Agreement, Plaintiff shall

fund such amounts.  The Receiver will not act in contravention of SpringHill SMC, LLC's rights under the Plymouth Meeting SNDA and the Plymouth Meeting Management Agreement.  In addition, SpringHill SMC, LLC will recognize the Receiver, or its designee, as the Owner under the Plymouth Meeting Management Agreement, and SpringHill SMC, LLC will continue to have the right to operate the Plymouth Meeting Hotel in accordance with Plymouth Meeting Management Agreement subject to its terms and conditions.  Notwithstanding any other provision of this Order, SpringHill SMC, LLC is authorized to pay any costs and expenses of the Plymouth Meeting Hotel, including costs and expenses that arise or relate to periods prior to the Receiver's appointment subject to and in accordance with the provisions of the Plymouth Meeting Management Agreement and the Plymouth Meeting SNDA.  Receiver or its designee is, in all events, authorized and empowered to take any and all appropriate action required of Owner by and pursuant to the Plymouth Meeting Management Agreement, including taking any and all appropriate action in administering the Plymouth Meeting Management Agreement.  Use of the terms "Defendants' Assets" and "Project Income" shall not include any "Defendant's Assets" or "Project Income" to be held by applicable Marriott Parties for the management and operation of the Plymouth Meeting Hotel pursuant to the terms of the Plymouth Meeting Management Agreement.

**IT IS FURTHER ORDERED** that, and notwithstanding anything to the contrary contained herein, and with respect to the portion of the Premises that comprises the hotel commonly known as Residence Inn by Marriott LV Hughes Center (the "LV Hughes Center Hotel"), the Receiver shall perform its duties hereunder in a manner that is in accordance with the terms of (i) the LV Hughes Center SNDA and (ii) the LV Hughes Center Management Agreement as if Receiver was the "Owner" thereunder.  The LV Hughes Center SNDA and the LV Hughes

Center Management Agreement shall remain in full force and effect in accordance with their respective terms despite the appointment of the Receiver and the Receiver shall have no right to cancel or terminate the LV Hughes Center Management Agreement, except in accordance with its terms. Until such time as the LV Hughes Center Management Agreement is terminated according to its terms, or this Order is modified with the consent of which Residence Inn by Marriott, LLC, the Receiver or its designee shall have the rights granted to, and the obligations of Owner, as defined in the LV Hughes Center Management Agreement and shall be entitled to act on behalf of, Owner under the LV Hughes Center Management Agreement.  The Receiver shall comply with the terms of the LV Hughes Center Management Agreement but shall not have any personal liability when acting as Owner to the extent insufficient funds prevent the Receiver's compliance. If there are insufficient funds from the operation of the LV Hughes Center Hotel to pay obligations of Owner pursuant to the terms of the LV Hughes Center Management Agreement, Plaintiff shall fund such amounts.  The Receiver will not act in contravention of Residence Inn by Marriott, LLC's rights under the LV Hughes Center SNDA and the LV Hughes Center Management Agreement.  In addition, Residence Inn by Marriott, LLC will recognize the Receiver, or its designee, as the Owner under the LV Hughes Center Management Agreement, and Residence Inn by Marriott, LLC will continue to have the right to operate the LV Hughes Center Hotel in accordance with LV Hughes Center Management Agreement subject to its terms and conditions.  Notwithstanding any other provision of this Order, Residence Inn by Marriott, LLC is authorized to pay any costs and expenses of the LV Hughes Center Hotel, including costs and expenses that arise or relate to periods prior to the Receiver's appointment subject to and in accordance with the provisions of the LV Hughes Center Management Agreement and the LV Hughes Center SNDA.  Receiver or its designee is, in all events, authorized and empowered to

take any and all appropriate action required of Owner by and pursuant to the LV Hughes Center Management Agreement, including taking any and all appropriate action in administering the LV Hughes Center Management Agreement.  Use of the terms "Defendants' Assets" and "Project Income" shall not include any "Defendant's Assets" or "Project Income" to be held by applicable Marriott Parties for the management and operation of the LV Hughes Center Hotel pursuant to the terms of the LV Hughes Center Management Agreement.

**SO ORDERED** this 1st day of March, 2024.

*Jennifer Rochon*

Jennifer L. Rochon
U.S. District Court Judge

**EXHIBIT 1**
**LEGAL DESCRIPTIONS**

**Ashford Tipton Lakes LP Legal Description**

By Mortgage, Assignment of Leases and Security Agreement by **Ashford Tipton Lakes LP**, a Delaware limited partnership to Bank of America, N.A., a national banking association, Barclays Bank PLC, a public company registered in England and Wales, and Morgan Stanley Bank, N.A., a national banking association, dated June 13, 2018 and recorded June 18, 2018 as Instrument No. 2018005411 in the County Recorder's Office for Bartholomew County, Indiana, Ashford Tipton, *inter alia*, pledged to the trustee identified therein property located at what is commonly known as 3888 Mimosa Drive, Columbus, Indiana, as is more particularly described as follows:

Lot Numbered One B (1B) in Woodcrest, Replat of Lot 1A, an Addition to the City of Columbus, Bartholomew County, as per plat thereof recorded May 28, 1996 in Plat Book Q, Page 158A, in the Office of the Recorder of Bartholomew County, Indiana.

### Ashford Scottsdale LP Legal Description

By Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing by **Ashford Scottsdale LP**, a Delaware limited partnership to Chicago Title Agency, Inc., as trustee for the benefit of Bank of America, N.A., a national banking association, Barclays Bank PLC, a public company registered in England and Wales, and Morgan Stanley Bank, N.A., a national banking association, dated June 13, 2018 and recorded July 12, 2018 as Instrument No. 20180528852 in the County Recorder's Office for Maricopa County, Arizona, Ashford Scottsdale, *inter alia*, pledged to the trustee identified therein property located at what is commonly known as 311 N Scottsdale Rd, Scottsdale, Arizona 85251, as is more particularly described as follows:

That portion of Lots 1 and 2, SCOTTSDALE OSBORN PLAZA, according to the plat of record in the office of the County recorder of Maricopa County, Arizona, recorded in Book 179 of Maps, page 45, and Affidavit recorded October 14, 1975 in Docket 11372, Page 500, and City of Scottsdale Correction of a Street Name recorded December 9, 2004 in Recording No. 2004-1449076, records of Maricopa County, Arizona, described as follows:

COMMENCING at the Southeast corner of said Lot 2;

THENCE South 89 degrees 50 minutes 47 seconds West, along the South line of said Lot 2, 145.66 feet to the Southwest corner of that property described in General Warranty Deed recorded February 16, 1994 in Recording No. 1994-132126, records of Maricopa County, Arizona, and the TRUE POINT OF BEGINNING;

THENCE continuing South 89 degrees 50 minutes 47 seconds West, 282.31 feet to a point of curvature with a radius of 12.00 feet;

THENCE along said curve, to the right, through a central angle of 90 degrees 09 minutes 13 seconds West, an arc length of 18.88 feet;

THENCE North 00 degrees 00 minutes 00 seconds East, along the West line of said Lot 2, 255.48 feet;

THENCE South 90 degrees 00 minutes 00 seconds East, 200.01 feet to the Southeast corner of that property described in Quit-Claim Deed recorded October 16, 1997 in Recording No. 1997-723637, records of Maricopa County, Arizona;

THENCE North 00 degrees 00 minutes 00 seconds East, 0.46 feet;

THENCE North 89 degrees 58 minutes 11 seconds East, 240.10 feet to a point on the East line of said Lot 2;

THENCE South 00 degrees 01 minute 25 seconds West, along said East line, 249.54 feet to the Northeast corner of that property described in General Warranty Deed recorded February 16, 1994 in Recording No. 1994-132126, records of Maricopa County, Arizona;

THENCE South 80 degrees 30 minutes 17 seconds West, along the North line of that property described in General Warranty Deed recorded February 16, 1994 in Recording No. 1994-132126, records of Maricopa County, Arizona, 67.05 feet to a point of curvature with a radius of 490.08 feet;

THENCE Southwesterly along said curve to the right, through a central angle of 09 degrees 20 minutes 30 seconds, an arc length of 79.90 feet to the TRUE POINT OF BEGINNING.

**Ashford Phoenix Airport LP Legal Description**

By Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing by **Ashford Phoenix Airport LP**, a Delaware limited partnership to Chicago Title Agency, Inc., as trustee for the benefit Bank of America, N.A., a national banking association, Barclays Bank PLC, a public company registered in England and Wales, and Morgan Stanley Bank, N.A., a national banking association, dated June 13, 2018 and recorded June 15, 2018 as Instrument No. 20180460430 in the County Recorder's Office for Maricopa County, Arizona, Ashford Phoenix, *inter alia*, pledged to the trustee identified therein property located at what is commonly known as 801 N 44th St, Phoenix, Arizona 85008, as is more particularly described as follows:

Lot 1, MARRIOTT RESIDENCE INN, according to the plat of record in Book 455 of Maps, page 3, records of Maricopa County, Arizona.

### Ashford Hawthorne LP Legal Description

By Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing by **Ashford Hawthorne LP**, a Delaware limited partnership to Chicago Title Agency, Inc., as trustee for the benefit Bank of America, N.A., a national banking association, Barclays Bank PLC, a public company registered in England and Wales, and Morgan Stanley Bank, N.A., a national banking association, dated June 13, 2018 and recorded June 19, 2018 as Instrument No. 20180609536 in the County Recorder's Office for Los Angeles County, California, Ashford Hawthorne, *inter alia*, pledged to the trustee identified therein property located at what is commonly known as 14620 Aviation Blvd, Hawthorne, California 90250, as is more particularly described as follows:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF HAWTHORNE, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

LOT 5 OF TRACT 52582, IN THE CITY OF HAWTHORNE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1231, PAGES 25 AND 26, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON SUBSTANCES IN AND UNDER SAID LAND LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE THEREOF; BUT WITH NO RIGHT OF SURFACE ENTRY, AS PROVIDED IN THE DEED RECORDED NOVEMBER 18, 1956 IN BOOK 53076, PAGE 82, OFFICIAL RECORDS.

PARCEL 2:

A NON EXCLUSIVE EASEMENT, APPURTENANT TO PARCEL A, FOR VEHICULAR ACCESS AND EGRESS, PUBLIC AND PRIVATE UTILITIES, WITH PEDESTRIAN INGRESS AND EGRESS, AND APPURTENANCES THEREOF, PURSUANT TO ARTICLE 4 OF THAT CERTAIN DECLARATION OF RECIPROCAL EASEMENTS, COVENANTS, CONDITIONS AND RESTRICTIONS, AS AFFECTING THE COMMON AREAS DESCRIBED IN EXHIBITS B AND C, PURSUANT TO THE RECORDATION THEREOF ON NOVEMBER 9, 1998 AS INSTRUMENT NO. 98-2053544, AND AS AMENDED BY FIRST AMENDMENT RECORDED FEBRUARY 3, 2000 AS INSTRUMENT NO. 00-0170110

## Ashford Plymouth Meeting LP Legal Description

By Open-End Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing by **Ashford Plymouth Meeting LP**, a Delaware limited partnership to Bank of America, N.A., a national banking association, Barclays Bank PLC, a public company registered in England and Wales, and Morgan Stanley Bank, N.A., a national banking association, effective as of June 13, 2018 and recorded June 25, 2018 as Instrument No. 2018041475, MTG Book No. 14540, Page 01508 in the records of the Recorder of Deeds for Montgomery County, Pennsylvania, Ashford Plymouth, *inter alia*, pledged to the trustee identified therein property located at what is commonly known as 430 Plymouth Rd, Plymouth Meeting, Pennsylvania 19462, as is more particularly described as follows:

ALL THAT CERTAIN unit in the property known, named and identified in the Declaration referred to below as "Interchange Corporate Center at Plymouth Meeting Condominium", a condominium located in Plymouth Township, Montgomery County, Pennsylvania, which has heretofore been submitted to the provisions of the Pennsylvania Uniform Condominium Act, 68 Pa C.S.A. Section 3101, et seq., by the recording in the Montgomery County Office of the Recorder of Deeds of a Declaration of Condominium dated October 29, 1999 and recorded November 5, 1999 in Deed Book 5295, Page 1493 and the Plats and Plans attached thereto and incorporated therein (the "Declaration"), being and designated in such Declaration as Unit One, together with a proportionate undivided interest in the Common Elements (as defined in the Declaration) of 42.6%.

Being the same premises which CNL Hotel, MI-4, LP, a Delaware Limited Partnership by Deed dated 4-10-2007 and recorded 5-7-2007 in Montgomery County in Deed Book 5646 page 1082. Page 1082 conveyed unto Ashford Plymouth Meeting LP, a Delaware Limited Partnership, in fee.

### Ashford San Jose LP Legal Description

By Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing by **Ashford San Jose LP**, a Delaware limited partnership to Chicago Title Agency, Inc., as trustee for the benefit Bank of America, N.A., a national banking association, Barclays Bank PLC, a public company registered in England and Wales, and Morgan Stanley Bank, N.A., a national banking association, dated June 13, 2018 and recorded June 18, 2018 as Instrument No. 2018119204 in the Official Records of Alameda County, California, Ashford San Jose, *inter alia*, pledged to the trustee identified therein property located at what is commonly known as 35466 Dumbarton Ct, Newark, California 94560, as is more particularly described as follows:

BEGINNING AT A POINT BEING AT THE SOUTHEASTERLY TERMINUS OF THE LINE COMMON TO SAID LOT 5 AND LOT 6, AS SAID LOTS ARE SHOWN NO SAID TRACT 5232 (148 MAPS 41), SAID POINT ALSO BEING ON THE NORTHWESTERLY RIGHT OF WAY LINE OF DUMBARTON COURT (FORMERLY HITECH COURT), SAID POINT ALSO BEING THE ARC OF A CURVE CONCAVE SOUTHEASTERLY, HAVING A RADIUS OF 64.00 FEET, AS SHOWN ON SAID TRACT 5232 (148 MAPS 41);

THENCE FROM SAID POINT OF BEGINNING, NORTHWESTERLY ALONG SAID COMMON LINE OF LOTS 5 AND 6, NORTH 56° 30' 09" WEST, 424.14 FEET; THENCE LEAVING SAID COMMON LINE, SOUTH 33° 29' 51" WEST, 12.00 FEET; THENCE SOUTH 56° 30' 09" EAST, 425.27 FEET TO A POINT BEING ON SAID NORTHWESTERLY RIGHT OF WAY LINE OF DUMBARTON COURT, SAID POINT ALSO BEING ON THE ARC OF A CURVE CONCAVE SOUTHEASTERLY, FROM WHICH POINT A RADIAL LINE BEARS SOUTH 67° 18' 34" EAST, 64.00 FEET; THENCE CLOCKWISE ALONG SAID CURVE HAVING A RADIUS OF 64.00 FEET, THROUGH A CENTRAL ANGLE OF 10° 48' 25", AN ARC DISTANCE OF 12.07 FEET TO THE POINT OF BEGINNING.

PARCEL C:

A NON-EXCLUSIVE ACCESS EASEMENT AS CONVEYED BY THAT CERTAIN "GRANT OF EASEMENT" RECORDED AUGUST 2, 1991, SERIES NO. 91-203822, ALAMEDA COUNTY RECORDS.

PARCEL D:

PRIVATE ACCESS EASEMENT OVER THOSE PORTIONS OF PARCELS 2 AND 3, PARCEL MAP 7499, DESIGNATED AS "PAE" (PRIVATE ACCESS EASEMENT) ON SAID MAP.

PARCEL E:

PRIVATE UTILITY EASEMENT OVER THOSE PORTIONS OF PARCELS 2 AND 3, PARCEL MAP 7499, DESIGNATED AS "UE" (PRIVATE UTILITY EASEMENT) ON SAID MAP.

PARCEL F:

A RECIPROCAL ACCESS AND UTILITY EASEMENT, AS CONVEYED BY THAT CERTAIN "AGREEMENT" RECORDED DECEMBER 23, 1999, SERIES NO. 99-451842, ALAMEDA COUNTY RECORDS.

## Ashford LV Hughes Center LP Legal Description

By Deed of Trust, Assignment of Leases and Security Agreement by **Ashford LV Hughes**

**Center LP**, a Delaware limited partnership to Morgan Stanley Bank, N.A., Barclays Bank PLC,

and Bank of America, N.A., dated June 13, 2018, and recorded on June 15, 2018 as Instrument

No. 20180615-0003313 with the County Recorder's Office for Clark County, Nevada, Ashford

LV, *inter alia*, pledged to the trustee identified therein property located at what is commonly

known as 370 Hughes Center Drive, Las Vegas, Nevada, as is more particularly described as

follows:

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN LAS VEGAS, IN THE COUNTY OF CLARK, STATE OF NEVADA, AND IS DESCRIBED AS FOLLOWS:

Parcel 1:

That portion of Lot One (1) of Hughes Center Unit No. 3, as shown by map thereof on File in Book 65, Page 38 of Plat Maps, in the Clark County Recorder's Office, Clark County, Nevada lying within the Southeast Quarter (SE ¼) of Section 16, Township 21 South, Range 61 East, M.D.M., Clark County, Nevada described as follows:

Commencing at the Southwest Corner of said Lot One (1), being a point on the Easterly right-of-way line of Howard Hughes Parkway (80.00 feet wide);
Thence along said right-of-way line, North 00°11'16" West, 108.63 feet;
Thence along said right-of-way line, curving to the right along the arc of a 420.00 foot radius curve, concave Southeasterly, through a central angle of 33°31'36", an arc length of 245.76 feet to a point of compound curvature to which a radial line bears North 56°39'40" West;
Thence curving to the right along the arc of a 25.00 foot radius curve, concave Southerly, through a central angle of 98°42'17", an arc length of 43.07 feet;
Thence South 47°57'23" East, 75.46 feet;
Thence curving to the left along the arc of a 200.00 foot radius curve, concave Northeasterly, through a central angle of 17°34'23", an arc length of 61.34 feet to a point of reverse curvature through which a radial line bears South 24°28'14" West;
Thence curving to the right along the arc of a 100.00 foot radius curve concave Southwesterly, through a central angle of 17°34'23", an arc length of 30.67 feet;
Thence South 47°57'23" East, 95.32 feet;
Thence curving to the left along the arc of a 168.50 foot radius curve, concave Northeasterly, through a central angle of 40°12'55", an arc length of 118.27 feet to a point bearing North 01°49'42" East, 151.00 feet from the South line of said Lot One (1);
Thence parallel with said South line, South 88°10'18" East, 252.77 feet;
Thence North 01°49'42" East, 37.00 feet to the POINT OF BEGINNING;
Thence from a tangent bearing North 88°10'18" West, curving to the right along the arc of a 15.00 foot radius curve, concave Northeasterly, through a central angle of 90°00'00", an arc length of 23.56 feet;
Thence North 01°49'42" East, 5.02 feet;

Thence curving to the left along the arc of a 46.00 foot radius curve, concave Southwesterly, through a central angle of 49°47'05", an arc length of 39.97 feet;

Thence North 47°57'23" West, 63.22 feet;

Thence North 42°02'37" East, 437.16 feet;

Thence South 89°11'14" East, 152.21 feet;

Thence from a tangent bearing South 21°03'16 West, curving to the left along the arc of a 150.00 foot radius curve, concave Easterly, through a central angle of 34°50'01", an arc length of 91.19 feet;

Thence South 13°46'45" East, 132.31 feet;

Thence curving to the right along the arc of a 311.50 foot radius curve, concave Southwesterly, through a central angle of 15°36'27", an arc length of 84.85 feet to a point of compound curvature to which a radial line bears South 88°10'18" East;

Thence curving to the right along the arc of a 131.50 foot radius curve, concave Northwesterly, through a central angle of 90°00'00", an arc length of 206.56 feet;  Thence North 88°10'18" West, 267.62 feet to the POINT OF BEGINNING.

(Deed reference 20120515-001122)

Parcel 2:

Easements for automobile ingress and egress as provided for in that certain "Grant of Easement" by and between Howard Hughes Properties, Limited Partnership, a Delaware Limited Partnership and LVHC Hotel Property, Limited Partnership, a Texas Limited Partnership recorded March 27, 1997 in Book 970327, Instrument No. 01747, Official Records, Clark County, Nevada.

Parcel 3:

Easements for the limited purpose of pedestrian and vehicular ingress and egress as provided for in that certain "Reciprocal Easement Agreement" by and between Howard Hughes Properties, Limited Partnership, a Delaware Limited Partnership, 3930 Building Partnership, a Nevada General Partnership, and LVHC Hotel Property, Limited Partnership, a Texas Limited Partnership recorded March 27, 1997 in Book 970327, Instrument No. 01748, Official Records, Clark County, Nevada.

Parcel 4:

Easements for parking, ingress and egress, public utilities as provided for in that certain amendment restatement of the Grant of Reciprocal Easements and Declaration of Covenant recorded December 6, 1995 in Book 951206 of Official Records, Clark County Nevada Records, as Document No. 00256, as affected by Notice of Annexation and Designation of Additional Landscape Area recorded March 27, 1997, in Book 970327 as Document No. 01743, Notice of Annexation recorded June 20, 1997, in Book 970620 as Document No. 00819, Supplemental Declaration Designating Additional Landscape Area recorded June 20, 1997, in Book 970620 as Document No. 00820, Notice of Annexation recorded August 17, 1999, in Book 990827 as Document No. 00987, and First Amendment to Amendment and Restatement of the Grant of Reciprocal Easements and Declaration of Covenants recorded September 15, 2006, in Book 20060915 as Document No. 001919, and by that Consolidated and Amendment and Restatement of the Amendment and Restatement of the Grant of Reciprocal Easements and Declaration of Covenants, recorded August 3, 2016, as Instrument No. 20160803-0002363, of Official Records.

## EXHIBIT 2
## CERTAIN DEFINED TERMS

As used in the Order to which this **Exhibit 2** is attached, the following terms shall have the meanings ascribed thereto as set forth below:

"Affiliate" shall mean, as to any Person, any other Person that, directly or indirectly, controls, is controlled by or is under common control with such Person. For purposes of this definition, the term "control" (including the terms "controlling," "controlled by" and "under common control with") of a Person means the possession, directly or indirectly, of the power: (i) to vote more than fifty percent (50%) of the voting stock of such Person; or (ii) to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting stock, by contract or otherwise.

"Gross Revenues" shall mean, with respect to each Hotel: (I)(A) Amounts actually collected by Receiver as rents or other charges for use and occupancy of such Hotel; and (B) all miscellaneous income earned by such Hotel, but shall exclude income derived from: (I) proceeds of claims on account of insurance policies; (II) abatement of taxes; (III) awards arising out of takings by eminent domain; (IV) discounts and dividends on insurance policies; (V) proceeds of any sale of all or any portion of such Hotel.

"Hawthorne Management Agreement" shall mean that certain Amended and Restated Management Agreement dated January 18, 2002, as amended and assigned, currently between Ashford TRS Hawthorne LLC and SpringHill SMC, LLC, under which SpringHill SMC, LLC operates the SpringHill Suites by Marriott Los Angeles LAX/Manhattan Beach.

"Hawthorne SNDA" shall mean that certain Subordination, Non-Disturbance and Attornment Agreement dated as of June 13, 2018 by and among Bank of America, N.A., Barclays Bank PLC and Morgan Stanley Bank, N.A., collectively as the Mortgagee and SpringHill SMC, LLC, as the Manager, Ashford Hawthorne LP, as the Borrower, and Ashford TRS Hawthorne LLC, as the Lessee.

"Lease" means any lease, sublease, license, (Excluding the Franchise Agreements and New Franchise Agreements), occupancy agreement and any other agreement, together with all modifications and amendments thereto, which relate to the use or occupancy of any part of the Premises.

"Loan" means that certain loan from Plaintiff to Defendants in the original principal amount of $86,640,000, which is secured by the Premises, among other things.

"Loan Documents" means all documents, instruments and agreements evidencing, securing or relating to the Loan, specifically including, without limitation, the Loan Documents as defined in the Complaint.

"LV Hughes Center Management Agreement" shall mean that certain Amended and Restated Management Agreement dated January 4, 2003, as amended and assigned, currently between Ashford TRS LV Hughes Center LLC and Residence Inn by Marriott, LLC, under which Residence Inn by Marriott, LLC operates the Residence Inn by Marriott Las Vegas Hughes Center.

"LV Hughes Center SNDA" shall mean that certain Subordination, Non-Disturbance and Attornment Agreement dated as of June 13, 2018 by and among Bank of America, N.A., Barclays Bank PLC and Morgan Stanley Bank, N.A., collectively as the Mortgagee and Residence Inn by Marriott, LLC, as the Manager, Ashford LV Hughes Center LP, as the Borrower, and Ashford TRS LV Hughes Center LLC, as the Lessee.

"Phoenix Airport A&S" shall mean that certain Assignment and Subordination of Management Agreement and Consent of Manager dated as of June 13, 2018 by and among Bank of America, N.A., Barclays Bank PLC and Morgan Stanley Bank, N.A., collectively as the Mortgagee and Remington Lodging & Hospitality, LLC, as the Manager, Ashford Phoenix Airport LP, as the Borrower, and Ashford TRS Phoenix Airport LLC, as the Lessee.

"Phoenix Airport Management Agreement" shall mean that certain Amended and Restated Management Agreement dated September 29, 2006, as amended and assigned, currently between Ashford TRS Phoenix Airport LLC and Remington Lodging & Hospitality, LLC, under which Remington Lodging & Hospitality, LLC operates the Residence Inn by Marriott Phoenix Airport.

"Plymouth Meeting Management Agreement" shall mean that certain Amended and Restated Management Agreement dated January 18, 2002, as amended and assigned, currently between Ashford TRS Plymouth Meeting LLC and SpringHill SMC, LLC, under which SpringHill SMC, LLC by Marriott, Inc. operates the SpringHill Suites by Marriott Philadelphia Plymouth Meeting.

"Plymouth Meeting SNDA" shall mean that certain Subordination, Non-Disturbance and Attornment Agreement dated as of June 13, 2018 by and among Bank of America, N.A., Barclays Bank PLC and Morgan Stanley Bank, N.A., collectively as the Mortgagee and SpringHill SMC, LLC, as the Manager, Ashford Plymouth Meeting LP, as the Borrower, and Ashford TRS Plymouth Meeting LLC, as the Lessee.

"Project Accounts" means collectively all checking, savings and depository accounts, all payroll, vendor, petty cash, escrow and security deposit accounts and all other accounts containing or evidencing any Project Income, defined below.

"Project Deposits" means all security and utility, prepayments, room deposits made for advance reservations, and other deposits received by Defendants and their agents under any Lease or any other agreement relating to the ownership, operation, maintenance, repair, restoration or use of the Premises, and all deposits made by Defendants to any utility or other service provider, contractor, vendor, lessor or other person or entity in connection with any labor, services, material or other items or property relating to the Premises.

"Project Documents" is defined to the broadest extent permitted under applicable law and specifically includes, without limitation: the originals of all books, records, statements, checkbooks, check registers, cancelled checks, bank and other statements, worksheets, spread sheets, memoranda, statements of account, receipts, files and other financial information; the originals of all leases, subleases, rental agreements, occupancy agreements, license agreements and amendments relating to the rental, occupancy, licensing and/or use of the Premises (including, without limitation, the Franchise Agreements), together with all files, correspondence and communications with all past, current and prospective lessees, tenants, occupants, licensees and/or users of the Premises and their agents and representatives; the originals of all marketing, advertising, listing and promotional materials; all telephone, facsimile, e-mail and post office box numbers and addresses, the originals of all listing and

commission contracts, agreements and commitments, together with all files, correspondence and communications with all brokers and their agents and representatives; the originals of all pictures, plans, floor plans, space plans, stacking plans, surveys, maps, specifications, drawings and other depictions and descriptions of the Premises; the originals of all permits, licenses (including, without limitation, liquor licenses), authorizations and other approvals; the originals of all contracts, agreements, purchase orders, invoices, bills, receipts, account statements, files, correspondence and communications with all utility companies, service providers, contractors, subcontractors, vendors, vendees, governmental authorities, adjacent land owners and other third parties having a right to ownership, repair, maintenance, improvement, management, leasing, operation, use, operation, preservation and/or protection of the Premises; all maintenance and testing records with respect to mechanical systems, fire life safety systems, plumbing systems, or other systems for which any Defendant has had maintenance or repair obligations within the two (2) years immediately preceding the date of this Order; the originals of all insurance policies and of all files, correspondence and communications with all insurance companies and their respective agents, brokers and representatives; copies of all local, state and federal tax returns for Defendants and for the Premises; the originals of all employee contracts and agreements and of all correspondence and communications with employees of Defendant, all employer and employee files, all payroll and employee records and copies of all local, state and federal employer and employee reports, tax deposits and returns; the originals of all notices, protests, objections, claims, demands, suits, complaints, petitions, injunctions, restraining orders, pleadings and mediation and arbitration proceedings received, sent or filed by or against the Premises or Defendants which in any way relates to or involves the Defendants' Assets. Additionally, the term "*Project Documents*" means and includes all such documents, information, instruments and materials, whether in tangible form or in the form of websites, social media accounts, computer or electronically stored or generated images, e-mails or other data, all login names and passwords and to the extent any of such documents, information, instruments or materials are computer or electronically stored or generated, Defendants shall provide, or cause to be provided, to the Receiver the original or copies of such computer programs or other computer software as may be necessary or reasonably required by the Receiver to access, read and make tangible copies thereof, together with all access codes, combinations and passwords necessary to gain access thereto.

"Project Expenses" means all costs, expenses, payments and other monetary obligations and liabilities, specifically including, without limitation, all Hotel employee payroll expenses, all real and personal property taxes and assessments, all costs of centralized purchasing or finance services programs directly related to the Hotels and all insurance premiums relating to the Premises.

"Project Income" means all rents, room fees and other income of the Hotels (including revenue from food and beverage services, telecommunication services and other services of the Hotels), issues, profits, income and other revenue of whatsoever nature or amount derived from or relating to the Premises, including, without limitation, any prepaid rents, room fees and income and any termination fees or payments relating to the operation of the Hotels and any Lease or other contract or agreement affecting the Premises and the proceeds from any insurance policy, any condemnation award and from the sale of all or any portion of the Premises.

"San Jose A&S" shall mean that certain Assignment and Subordination of Management Agreement and Consent of Manager dated as of June 13, 2018 by and among Bank of America, N.A., Barclays Bank PLC and Morgan Stanley Bank, N.A., collectively as the Mortgagee and Remington Lodging & Hospitality, LLC, as the Manager, Ashford San Jose LP, as the Borrower, and Ashford TRS San Jose LLC, as the Lessee.

"San Jose Management Agreement" shall mean that certain Amended and Restated Management Agreement dated September 29, 2006, as amended and assigned, currently between Ashford TRS San Jose LLC and Remington Lodging & Hospitality, LLC, under which Remington Lodging & Hospitality, LLC operates the Residence Inn by Marriott Newark Silicon Valley.

"Scottsdale Management Agreement" shall mean that certain Amended and Restated Management Agreement dated January 4, 2003, as amended and assigned, currently between Ashford TRS Scottsdale LLC and Courtyard Management Corporation, under which Courtyard Management Corporation operates Courtyard by Marriott Scottsdale Old Town.

"Scottsdale SNDA" shall mean that certain Subordination, Non-Disturbance and Attornment Agreement dated as of June 13, 2018 by and among Bank of America, N.A., Barclays Bank PLC and Morgan Stanley Bank, N.A., collectively as the Mortgagee and Courtyard Management Corporation, as the Manager, Ashford Scottsdale LP, as the Borrower, and Ashford TRS Scottsdale LLC, as the Lessee.

"Tenant" means any tenant, lessee, subtenant, sublessee, licensee, occupant or other user of all or any part of the Premises under any current or previous Lease.

"Tipton Lakes A&S" shall mean that certain Assignment and Subordination of Management Agreement and Consent of Manager dated as of June 13, 2018 by and among Bank of America, N.A., Barclays Bank PLC and Morgan Stanley Bank, N.A., collectively as the Mortgagee and Remington Lodging & Hospitality, LLC, as the Manager, Ashford Tipton Lakes LP, as the Borrower, and Ashford TRS Tipton Lakes LLC, as the Lessee.

"Tipton Lakes Management Agreement" shall mean that certain Amended and Restated Management Agreement dated September 29, 2006 as amended and assigned, currently between Ashford TRS Tipton Lakes LLC and Remington Lodging & Hospitality, LLC, under which Remington Lodging & Hospitality, LLC operates the Courtyard by Marriott Columbus Tipton Lakes.

**EXHIBIT 3**
**RECEIVER'S FEE**

| RECEIVER & MANAGEMENT | | | |
|---|---|---|---|
| | **Receiver Fee*** | **Management Fee*** | **Accounting*** |
| **(4) Marriott Managed** | **$4,000** | **N/A** | **N/A** |
| **(3) Remington Managed** | **$4,000** | **N/A** | **N/A** |
| Courtyard Scottsdale Old Town - Scottsdale, AZ (Marriott Managed) Residence Inn Las Vegas Hughes Center - Las Vegas, NV (Marriott Managed) SpringHill Suites Los Angeles LAX/Manhattan Beach - Hawthorne, CA (Marriott Managed) SpringHill Suites Philadelphia Plymouth Meeting - Plymouth Meeting, PA (Marriott Managed) Courtyard Columbus Tipton Lakes - Columbus, IN (Remington Managed) Residence Inn Newark Silicon Valley - Newark, CA (Remington Managed) Residence Inn Phoenix Airport - Phoenix, AZ (Remington Managed) | | | |
| **IF GF replaced (3) Remington managed hotels:** | **$500** | **Greater of 2.5% or $5,000 of gross** | **$1,000** |
| Courtyard Columbus Tipton Lakes - Columbus, IN Residence Inn Newark Silicon Valley - Newark, CA Residence Inn Phoenix Airport - Phoenix, AZ | | | |

***Above terms are per month, per hotel.**

*Additional Terms*
- Reimbursement of reasonable out of pocket expenses
- Court appearance fee equal to $1,500 per day plus out of pocket expenses
- One time wind down fee of $2,500 per hotel, upon termination
- In the event that out-of-pocket expenses are incurred prior to the appointment of the Receiver, and the receivership for any cause is not actualized, those expenses will be reimbursed to GF or its affiliate.